Hillsborough, }
May 1, 1923. }

ERNEST BELIVEAU, *Adm'r, v.* THE JOHN B. VARICK COMPANY.

The assertion by counsel of a fact fairly inferable from the evidence is unexceptionable. The statement by counsel *arguendo* of facts which are common knowledge is unexceptionable.

And so of counsel's statement of a fact not in evidence, unless it is at least possible that it may have produced the verdict.

CASE, for causing the death of the plaintiff's intestate. Trial by jury and verdict for the defendants.

The defendants are accustomed to let guns to their customers in the fall. When they let one, they keep track of it by recording the kind of gun and the name of the person who hires it in a small pass-book. The intestate and a companion each hired a gun in the fall of 1919 and the intestate's companion shot him as they were running to catch a team. The plaintiff contended that it was negligence to let these boys have a gun; and the defendants contended that the accident was caused by the negligence of the intestate's companion.

The facts and the exceptions appear in the opinion. Transferred by *Allen*, J.

*Joseph E. Lachance* and *Robert W. Upton,* for the plaintiff.

*Patrick H. Sullivan* and *George A. Wagner,* for the defendants.

PLUMMER, J.    The defendants' agent, who was called by the plaintiff as a witness, testified in substance that they were accustomed to keep the pass-book, in which they kept a record of the guns they let, only a short time after they had served their purpose, — that is, after the guns had been returned, — and that it was impossible when they first learned of the plaintiff's claim to ascertain which one of their clerks waited on these boys.

Defendants' counsel in closing asked the jury to make some allowances for them because they had not shown what transpired at the time they let these boys have the guns and said the "1919 book was thrown away, and when the defendants got notice of this suit, late in the year 1920, as late as the fourth day of September, the book, my friends, which would have shown who loaned that gun and who carried on this affair with these young men, that book was gone, and we were at a loss, on account of that, to testify to this transaction," and the plaintiff excepted.

The plaintiff says there was no evidence to sustain counsel's statement that the pass-book had been thrown away.    In other words, he says counsel was testifying when he made that statement. It is obvious there is no merit in this contention, for the defendants' agent testified that it was their custom to throw these pass-books away after they had served their purpose; and it can be found from the fact, that was the defendants' custom, that the 1919 pass-book was thrown away, for it was nine or ten months after they let the guns before they learned of the suit.    That is also fairly inferable from the testimony of the defendants' agent that when they were notified of the suit in the fall of 1920, it was impossible for them to ascertain which one of their clerks waited on these young men.    If they had had the pass-book there would have been no difficulty in ascertaining that fact, for the book would have shown who made the entry, for one who is familiar with another's handwriting can generally recognize it wherever and whenever he sees it.

In short, counsel was well within his rights when he asked the jury to find that the 1919 pass-book had been thrown away before the defendants knew of the suit and that for that reason they were unable to produce the clerk who waited on these young men.

The defendants' counsel in support of his contention that the intestate's death was caused by the negligence of his companion said: "You and I know that accidents happen in hunting, always have happened, and, making allowance for the natural human actions, that they will happen. You cannot say that from this day forth no accidents will happen, even to old and experienced men, and they happen, as accidents happen on the street car or other places, because for a moment somebody fails to remember — some-one forgets for a moment. Perhaps some of you have seen the sign that ninety-eight per cent. of accidents result from carelessness. It might have happened that somebody forgot for a minute," and the plaintiff excepted.

The plaintiff bases his contention in respect to this exception on the fact there is no evidence tending to prove either that there was such a sign or that ninety-eight per cent. of all accidents are caused by negligence.

While it is true there is no evidence from which either of these facts can be found, it is equally true that every argument contains many statements of that kind.

For example in this case, counsel said to the jury, "You and I know that accidents happen in hunting, always have happened" and always will happen, but no one would think counsel was going beyond the bounds of legitimate advocacy because he made these statements, for they are all matters of common knowledge. What is true in respect of these statements is also true in respect to the statement excepted to, for it is common knowledge that nearly all accidents are the result of negligence. Saying that ninety-eight per cent. of all accidents are caused in that way is but another way of saying that most accidents are caused by negligence and that they are is common knowledge.

In other words, if counsel had said it is a matter of common knowledge that ninety-eight per cent. of all accidents are the result of negligence instead of making the statement excepted to, no one would have thought his argument was unfair.

If, therefore, the verdict is to be set aside, it must be because counsel said there was a sign and not because he said ninety-eight per cent. of all accidents are caused by negligence, for it is common knowledge that that statement is true. How the fact counsel said there was a sign would prejudice the jury in favor of the defendants rather than in favor of the plaintiff is far from clear; the plaintiff was contending that the accident was caused by the defendants' negli-

gence and they were contending that it was caused by the negligence of the intestate's companion.

But, passing that, it is clear that the fact counsel said there was a sign could not have prejudiced the plaintiff; so, though there was no evidence either that there was such a sign or that the fact it stated was true, it furnishes no reason for disturbing the verdict, for a verdict will not be set aside because counsel states a fact not to be found in the evidence, unless it is at least possible that it may have produced the verdict.     *Williams* v. *Company*, 80 N. H. 137, 139.

*Plaintiff's exceptions overruled.*

All concurred.