Rockingham
No. 83-145

THE STATE OF NEW HAMPSHIRE

v.

STEVEN BEAUDETTE

February 29, 1984

*Gregory H. Smith*, attorney general (*Paul Barbadoro*, assistant attorney general, on the brief and orally), for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

PER CURIAM. The defendant was indicted and convicted following a jury trial (*Dalianis*, J.) of accomplice to armed robbery, RSA 626:8; RSA 636:1, and felonious use of a firearm, RSA 650-A:1 (Supp. 1983). We affirm in part, reverse in part, and remand.

The defendant, his minor son, and another male minor, on April 20, 1982, drove to Pierce Island in Portsmouth, allegedly to "rob someone and extort money." Upon arriving there, the other minor, who testified for the State at the trial, met the victim and they agreed to engage in homosexual activity in the latter's automobile. When the victim began performing fellatio on the minor, he noticed a camera flash. He sat upright and observed the defendant pointing a rifle and a flashlight at him. The defendant's son was standing on the other side of the automobile holding the camera, and pointing a pistol at the victim.

The defendant instructed the victim not to move and the defendant's son took his wallet and keys. The victim was then handed a clipboard and instructed to write his name and address on the paper. During this period, Officer Paul Famulari, of the Portsmouth Police Department, arrived on the scene and asked the victim for his driver's license. He communicated to the police officer that

he was being robbed. The officer then placed the defendant and the two minors under arrest.

In searching the immediate area, the officer located a rifle and pistol, both being pellet guns, under the victim's automobile. The rifle, which the defendant had held, was identified as an operable pellet gun that discharges a .177 caliber pellet, propelled by pneumatic force. The prosecution's expert witness testified that this rifle was capable of causing serious bodily injury or even death.

The defendant first contends that a pellet rifle does not fall within the class of weapons proscribed by RSA 650-A:1 (Supp. 1983), and therefore that he could not be convicted of felonious use of a firearm. We agree.

RSA 650-A:1 (Supp. 1983) provides that "[a] person is guilty of a class B felony if he commits or attempts to commit any felony when armed with a pistol, revolver, rifle, shotgun or any other firearm." The legislature has not defined the term "firearm", nor have we had occasion to interpret its meaning. *Cf. State v. Umbrello*, 106 N.H. 336, 211 A.2d 400 (1965) (holding that tear gas pencil is not a loaded pistol).

To aid us in determining the plain meaning of the term in the statute, we refer to Webster's Third New International Dictionary 854 (1961), which defines a firearm as "a weapon from which a shot is discharged by gunpowder."

Courts in other jurisdictions have considered this question and determined that gunpowder and the capability of discharge are the distinguishing features of a firearm. *See State v. Johnson*, 657 P.2d 1139, 1141 (Kan. App. 1983); *Douglas v. State*, 37 Md. App. 557, 558, 378 A.2d 189, 190 (1977); *see also State v. Lawr*, 263 N.W.2d 747, 749 (Iowa 1978); *Com. v. Sampson*, 422 N.E.2d 450, 452 (Mass. 1981); *Com. v. Lowary*, 345 A.2d 170, 171 (Pa. 1975); *but see Holloman v. Com.*, 221 Va. 196, 198, 269 S.E.2d 356, 359 (1980).

■■ Since the pellet from the defendant's gun was propelled by pneumatic force, we rule that it was not a "firearm" within the meaning of RSA 650-A:1 (Supp. 1983). As the Wisconsin Supreme Court stated: "A pellet gun is not a firearm. A firearm acts by force of gunpowder, and the pellet gun here acted by force of a $CO_2$ cartridge." *State v. Antes*, 74 Wis. 2C 317, 324, 246 N.W.2d 671, 674 (1976). Accordingly, we reverse the defendant's conviction for the felonious use of a firearm.

Secondly, the defendant contends that the New Hampshire Constitution's double-jeopardy prohibition was violated when he was convicted of the crimes of accomplice to armed robbery and felonious use of a firearm. *See Heald v. Perrin*, 123 N.H. 468, 473–74,

464 A.2d 275, 278 (1983); N.H. CONST. pt. I, art. 16. The defendant, however, failed to make a timely objection and exception to preserve this point and, therefore, is precluded from raising it. *Roy v. Perrin,* 122 N.H. 88, 100, 441 A.2d 1151, 1159 (1982); *see Martineau v. Perrin,* 119 N.H. 529, 531, 404 A.2d 1100, 1102 (1979); *see also Wainwright v. Sykes,* 433 U.S. 72, 88–89 (1977).

The defendant next contends that the indictment charging him as an accomplice to armed robbery was defective because it failed to allege a material element of armed robbery; namely, that the defendant took the victim's property "with a purpose to deprive him thereof." RSA 637:3, I; *see* RSA 636:1, I. We do not agree.

The indictment stated:

> "With the purpose of promoting or facilitating the commission of the crime of armed robbery, he, acting in concert with . . . and . . . , aided the commission of this offense as he purposely put Michael . . . in fear of the immediate use of physical force by brandishing a rifle which the said Michael . . . reasonably believed to be a deadly weapon while the said . . . demanded and received Michael['s] . . . wallet and took his car keys."

■■ "Whether an indictment is sufficient depends on whether 'it gives the defendant enough information so that he can prepare for trial.'" *State v. Taylor,* 121 N.H. 489, 495, 431 A.2d 775, 778 (1981) (quoting *State v. Meloon,* 119 N.H. 76, 77, 397 A.2d 1041, 1042 (1979)). We conclude that the plain language of this indictment provided adequate notice to the defendant and that it did not prejudice him in any way. We note that in her charge to the jury the trial judge mentioned several times that to find the defendant guilty of accomplice to armed robbery they must find theft "with a purpose to deprive."

■ Finally, the defendant argues that the evidence was insufficient to sustain a conviction as accomplice to armed robbery. The defendant contends that he was part of a "sting" operation or extortion scheme and did not intend theft, because he believed the keys and wallet would be returned. We find this argument without merit.

From the evidence introduced at trial, a reasonable jury could have found, beyond a reasonable doubt, that the defendant intended to deprive the victim of his property; thus, we uphold the jury's verdict. *State v. Goupil,* 122 N.H. 857, 859, 451 A.2d 1284, 1285 (1982). The other minor testified at trial that the trio went to Portsmouth to "rob someone and extort money." There was also evidence that the

defendant prepared a tape-recorded set of instructions which discussed what should be done with any money stolen during the trip.

*Conviction for felonious use of a firearm reversed; conviction for the crime of accomplice to armed robbery is affirmed.*